UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GUSTAVO COLIN LOPEZ,

    Petitioner,

v.

F. PONCE,

    Respondent.

No. 2:15-cv-1092 KJM KJN P

FINDINGS & RECOMMENDATIONS

I. Introduction

Petitioner is a federal prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. In claim one, petitioner alleges that he was wrongly returned to federal custody after he was released from state custody and deported from the United States. In claim two, petitioner alleges that his federal sentence was not properly calculated. After carefully reviewing the record, the undersigned recommends that the petition be denied.

II. Background

The background facts are largely undisputed.

On April 16, 2010, petitioner was arrested by California state authorities in case no. C1074893, Santa Clara County Superior Court. (ECF No. 14 at 3.) On April 17, 2010, petitioner was released from state custody on this case. (Id.) On September 30, 2010, petitioner was re-arrested on case no. C1074893, and held at the Santa Clara County Department of Corrections

("DOC"). (Id.) On October 4, 2010, while in the custody of the Santa Clara County DOC, petitioner was charged with case no. C1088724. (Id.)

On November 10, 2010, petitioner was indicted in the United States District Court for the Northern District of California in case no. CR-10-0823 JW. (Id.) On December 10, 2010, petitioner filed a petition for writ of prosecundum in his federal case. (Id.)

On December 21, 2010, the Santa Clara County Superior Court dismissed petitioner's case no. C1088724. (Id.)

On December 22, 2010, petitioner was indicted in the Northern District Court in case no. CR-10-0932 LHK, and was writted from Santa Clara County for a federal court appearance. (Id.)

On May 17, 2011, petitioner was sentenced to two years of imprisonment and a concurrent 120 days of imprisonment in case no. C1074893 (Santa Clara County). (Id.) Petitioner remained in the custody of the Santa Clara County DOC pending sentencing on his federal charges. (ECF No. 14-1 at 14.)

On March 28, 2013, petitioner was sentenced in the Northern District, for case no. CR-10-0823 JW, to a 180 month term of confinement. (ECF No. 14 at 3-4.) Petitioner was also sentenced in case no. CR-10-0932 LHK to a 96 month term of confinement, for Illegal Reentry Following Deportation, to be served concurrently with the sentence in case no. CR-10-0823 JW. (Id. at 4.)

After sentencing in the Northern District, petitioner was returned to authorities at the Santa Clara DOC. (Id.) On April 10, 2013, petitioner was transferred by Santa Clara County DOC to the California Department of Corrections and Rehabilitation ("CDCR") to serve his state sentence. (Id.)

CDCR computed the state 2 year term of imprisonment and, applying good conduct and jail credit, determined that petitioner had completed his sentence on March 15, 2011. (Id.) Petitioner was released from CDCR custody and placed in the custody of Immigration and Customs Enforcement ("ICE") officials on April 24, 2013. (Id.) Per CDCR, there was no federal detainer by the United States Marshals Service on file at the state institutions. (Id.) Instead, the United States Marshal lodged the detainer with the Santa Clara County Jail. (Id. at 5.)

On April 24, 2013, ICE deported petitioner from the United States, apparently unaware of the Marshal's detainer in place for the sentences imposed for petitioner's federal convictions. (ECF No. 15 at 1-2.)

On October 21, 2014, the Border Security Task Force arrested petitioner in Brawley, California. (ECF No. 14-2 at 40.) On October 22, 2014, the United States Attorney's Office for the Southern District of California charged petitioner in case no. 14-mj-09028 PL for being a deported alien found in the United States. (Id.) Petitioner has been in custody since his October 21, 2014 arrest. On November 18, 2014, the complaint in case no. 14-mj-09028 PL was dismissed, and petitioner is serving the term of imprisonment for his two previous federal convictions. (Id. at 38.)

In response to the filing of the instant petition, the BOP recalculated petitioner's sentence:

> Initially, the Bureau prepared a sentence computation for Petition[er], based on a 180-month term of imprisonment beginning October 21, 2014 (the day he appeared in federal custody after the ICE arrest) with no jail credit given. Based on this calculation, petitioner was scheduled to release from the Bureau, via Good Conduct Time Release ("GCT REL") on November 15, 2027. [Footnote 2.] See Attachment 11. However, that sentence computation has been revised, based on the information learned during my research after the Petition was filed.
>
> [Footnote 2: The Bureau used PS 5880.28, Sentence Computation Manual (CCCA of 1984), and the provisions of Title 18 U.S.C. § 3585(a), A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served.]
>
> 9. After reviewing all the new documentation, from which the documents attached here were taken, Petitioner is entitled to credit while at liberty from April 25, 2013, through October 20, 2014, for a total of 544 days. The United States Marshals lodged the detainer with the Santa Clara County Jail, but the detainer was not on file with the California State Prison at San Quentin where Petitioner was transferred to begin service of his state 2 year sentence. The California Department of Corrections released the Petitioner to ICE, instead of the United States Marshals Service to being service of the federal sentences. Pursuant to the rule in the Ninth Circuit, once a prisoner is released "through the inadvertence of agents of the government and through no fault of his own," the prisoner should be given credit toward his federal sentence from the date he was released by the authorities to the date he actually began to serve his federal sentence. Green v. Christiansen, 732 F.2d 1397, 1400 (9th

Cir. 1984).

> 10. The Bureau recalculated the Petitioner's federal sentences in accordance with the Bureau of Prisons Program Statement 5160.5, <u>Designation of State Institutions for Service of Federal Sentence</u>, and Title 18 U.S.C. § 3621(b), and determined a retroactive, concurrent, nunc pro tunc designation would be appropriate. In Petitioner's case, we have determined the Petitioner's sentence commenced on March 28, 2013, the same day the sentences were imposed. Additionally, the Petitioner will receive jail credit from March 16, 2011, the day after the state sentence expired, through March 27, 2013, the day before the federal sentences were imposed. Petitioner's new projected release date is April 9, 2024 (applying 705 days of projected good conduct time, which is all possible good conduct time he can earn). See Attachment 1.
>
> 11. The sentences are computed in accordance with federal statutes and BOP policy.

(ECF No. 14 at 4-6.)

III. <u>Discussion</u>

In claim one, petitioner argues that the United States waived or is estopped from asserting any right to execute the federal prison sentences imposed upon him prior to his deportation and illegal reentry because, rather than forcing him to serve his federal sentences, the United States allowed CDCR to hand him over to ICE, who then deported him to Mexico. In claim two, petitioner argues that he is entitled to credit for the time he was at liberty, including good time.

Respondent argues that the petition should be dismissed on grounds that petitioner failed to exhaust administrative remedies. With respect to claim one, respondent also argues that petitioner fails to state a claim for violation of his right to due process.

A. <u>Claim Two: Alleged Miscalculation of Sentence</u>

As discussed above, in response to the petition, respondent determined that petitioner was entitled to credit for the 544 days he was at liberty, i.e., from April 25, 2013 to October 20, 2014. Petitioner's sentence has been recalculated based on this award of credit.

On September 27, 2017, the undersigned ordered respondent to file further briefing clarifying whether the 705 days of "projected good conduct credit" awarded to petitioner referred to credit he earned while at liberty. (ECF No. 19.) If BOP did not award petitioner good conduct credit for the time he was at liberty, the undersigned ordered respondent to address why petitioner

4

did not receive this credit. (Id.)

On November 16, 2017, respondent filed further briefing in response to the September 27, 2017 order. (ECF No. 22.) In this further briefing, respondent clarifies that the 705 days of "projected good conduct credit" includes good conduct credit petitioner accrued while he was at liberty. (Id. at 1.) Respondent states that petitioner received good conduct credit for each day that has passed since his release from state prison, including the time he was not actually in custody. (Id. at 1-2.)

Petitioner's sentence has been recalculated to include the time he was at liberty, including good time credit. Thus, as to this claim, petitioner has received the relief he requested. Accordingly, petitioner's claim that he did not receive proper credit for the time he was at liberty is moot.

B. Claim One: Estoppel and Waiver

*Failure to Exhaust Administrative Remedies*

Respondent argues that petitioner failed to exhaust administrative remedies. The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." Castro-Cortez v. I.N.S., 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006); see also Rojas-Garcia v. Ashcroft, 339 F.3d 814, 819 (9th Cir. 2003) (a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal"). Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted)). However, "even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if

5

'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)).

In support of the claim that petitioner failed to exhaust administrative remedies, respondent filed the declaration of Angelica Holland, a Management Analyst at the Designation and Sentence Computation Center for the Federal Bureau of Prisons. (ECF No. 14.) Ms. Holland states that she searched the computerized inmate database, known as SENTRY, that tracks administrative remedies received by BOP. (Id. at 2.) She states that she found no record of petitioner filing a request for administrative remedies regarding the issues raised in this petition. (Id.)

Petitioner does not appear to dispute that he failed to exhaust administrative remedies.

The undersigned finds no circumstances warrant excusing petitioner from the requirement that he exhaust administrative remedies. Accordingly, the undersigned recommends that claim one be denied based on petitioner's failure to exhaust administrative remedies. In the alternative, the undersigned herein finds that claim one is without merit.

*Merits*

As stated above, petitioner argues that the United States waived or is estopped from asserting any right to execute the federal prison sentences imposed upon him prior to his deportation and illegal reentry because, rather than forcing him to serve his federal sentences, the United States allowed CDCR to hand him over to ICE, who then deported him to Mexico. In the answer, respondent argues that this claim is without merit. For the reasons stated herein, the undersigned agrees.

In U.S. v. Martinez, 837 F.2d 861, 864-65 (9th Cir. 1988), the Ninth Circuit discussed the law regarding waiver and estoppel with respect to claims alleging delays in execution of federal sentences:

> At common law, "where the court's judgment is that the defendant be imprisoned for a certain term and for any reason, other than death or remission of sentence, time elapses without the

imprisonment being endured, the sentence remains valid and subsisting in its entirety." United States v. Vann, 207 F.Supp. 108, 113 (E.D.N.Y.1962). Thus, under common law a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed.

More recent cases, however, examine the totality of the circumstances surrounding the delay in execution of sentence. See Johnson v. Williford, 682 F.2d 868, 873 (9th Cir. 1982) (citing United States v. Merritt, 478 F.Supp. 804, 807 (D.D.C.1979)). If from the totality of the circumstances due process is violated, a convicted person is not required to serve the entire sentence imposed. See id. Traditionally, in cases involving delay in execution of sentence, federal courts have examined an alleged due process violation under the theories of waiver or estoppel. Id.; Green v. Christiansen, 732 F.2d 1397, 1399 (9th Cir.1984).

Under the waiver theory, this court in Johnson, 682 F.2d at 873, adopted the totality of circumstances test espoused in Merritt:

> A convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several additional factors must be present before relief will be granted-the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his incarceration must be "unequivocally inconsistent with 'fundamental principles of liberty and justice.' "

Merritt, 478 F.Supp. at 807.

\* \* \*

Courts have looked with favor on a defendant's attempt to bring a mistake to the government's attention. See Shelton v. Ciccone, 578 F.2d 1241, 1245 (8th Cir.1978) (petitioner's mother calls authorities); White v. Pearlman, 42 F.2d 788, 789 (10th Cir.1930) (prisoner brings mistaken release to warden's attention, but is "brushed aside"); Merritt, 478 F.Supp. at 807 (defendant contacts U.S. Marshal's office several times).

In Green, this court held that the government waives the right to incarcerate only "when its agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." 732 F.2d at 1399. See also Johnson, 682 F.2d at 872–73 (due process violated when prisoner was incarcerated after being released on parole following at least eight separate administrative reviews); Shields v. Beto, 370 F.2d 1003, 1004 (5th Cir.1967) (due process violation to delay execution of sentence twenty-eight years).

\* \* \*

7

Under the estoppel theory, this court has employed a four-part test which requires that:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.

Green, 732 F.2d at 1399.

United States v. Martinez, 837 F.2d 861, 864–65 (9th Cir.1988).

In McPhearson v. Benov, 2014 WL 1794561 (E.D. Cal. 2014), the district court reviewed the cases involving the re-incarceration of prisoners who were mistakenly released:

> A review of the decisions of the Ninth Circuit in cases involving the re-incarceration of prisoners who have been mistakenly released or allowed to remain at liberty is illuminating with respect to the application of these principles. In Johnson v. Williford, 682 F.2d 868 (9th Cir.1982), the petitioner had been convicted and sentenced under a federal statute requiring a minimum ten year term of imprisonment without the possibility of parole. 682 F.2d at 869. Following several sentencing computation reviews by the Bureau of Prisons and a hearing before the U.S. Parole Commission, petitioner was released on parole with no release audit apparently being performed and without discovery of the fact that he was in fact statutorily ineligible for parole. Id. at 870. Petitioner Johnson remained at liberty on parole for fifteen months and during that time successfully reintegrated into the community-living with his wife and two teenage children, operating his own business, reporting regularly to his parole officer and making all of his scheduled court appearances. Id. When his ineligibility for release on parole was discovered by federal authorities, he was arrested and returned to custody. Under these circumstances, the Ninth Circuit held that the government was estopped from returning the petitioner to prison after he had been erroneously released on parole.
>
> While observing that "[i]n general, equitable estoppel is not available as a defense against the government," the court concluded that the government's wrongful conduct in releasing the petitioner threatened "to work a serious injustice," where he had been "reunited with his family" and had left a steady job to start his own business. Id. at 871. However, the "crucial" fact relied upon by the Ninth Circuit in finding a due process violation in the petitioner's case was the government's "active misadvice" to Johnson at eight separate administrative reviews that he was in fact eligible for parole which caused petitioner to hold a legitimate and sincere belief that his release was lawful and not the product of some mistake or error. Id. at 872.
>
> Next, in Green v. Christiansen, the petitioner had been convicted of separate criminal offenses in both federal and California courts and

8

was sentenced to serve those sentences of different lengths concurrently. 732 F.2d at 1398. Although the state sentence was the shorter of the two, the California Department of Corrections (CDCR) put a detainer on petitioner pursuant to which he was taken into state custody to begin the concurrent service of the federal and state sentences. Id. When CDCR inquired of the U.S. Marshal whether they wished to place a federal detainer on petitioner Green, they specifically declined to do so. Id. Thereafter, petitioner Green was released from state custody on parole and successfully completed his state parole term. Id. Two years later, federal authorities discovered that petitioner Green had been released from state custody before completing his federal sentence and immediately caused him to be arrested on an escape warrant. Id. at 1399. He was thereafter incarcerated to serve the remainder of his federal sentence. Id. at 1398–99.

On appeal following the dismissal of his habeas petition, the Ninth Circuit concluded that the failure of the U.S. Marshal to place a detainer on Green did not constitute a waiver of the government's right to recommit him into custody. Id. at 1399. In so holding, the court contrasted the circumstances in the case before it with the facts presented in Johnson and observed:

> In Johnson, the prisoner had been led to believe through eight successive administrative reviews, that he was to be eligible for parole at the time that he was released. His expectations were created and heightened by this process. No such expectation was built up in Green by the simple failure to place a detainer on him. Nor did the government so mislead Green that it would be improper to charge him with constructive knowledge that he still had time to serve. See Johnson v. Williford, 682 F.2d at 872. Green therefore fails to meet the second and third elements required to give rise to an estoppel.

Id.

Finally, in United States v. Martinez, the petitioner had been convicted of obstruction of justice and was sentenced to four years in federal prison but remained free on bail pending his appeal. 837 F.2d at 862. His judgment of conviction was affirmed, the Supreme Court denied certiorari and the District Court thereafter spread upon the record the mandate. Id. However, although his counsel was present at the spread of the mandate, petitioner Martinez was not. Id. Moreover, although his bail was thereafter exonerated, petitioner Martinez was never ordered to surrender to prison authorities to begin serving his sentence. Id. at 862–63. Over seven years later, the FBI discovered that petitioner Martinez had never served his sentence. Thereafter, the government filed a motion with the District Court seeking an order requiring Martinez to begin service of his sentence. Id. at 863. Throughout the seven and one-half years between his conviction and his eventual incarceration, petitioner Martinez "made no attempt to conceal his identity or to flee," he lived at the same address for twenty-one years, and he continued to work at the same job. Id. Nonetheless, the Ninth Circuit rejected his

9

> claim that his incarceration after such a delay violated the Due Process Clause. Id. at 865.
>
> In so holding, the Ninth Circuit noted both that the government's conduct "must be more than mere negligence" in order to entitle a petitioner to relief in such cases and that "[m]ere unexplained delay does not show misconduct." Id. (quoting Jaa v. United States I.N.S., 779 F.2d 569, 572 (9th Cir.1986)). See also Camper v. Norris, 36 F.3d 782, 784 (8th Cir.1994) ("The habeas petitioner shoulders the heavy burden of establishing that the state's action was so affirmatively wrong or its inaction was so grossly negligent that requiring him to serve his sentence would be unequivocally inconsistent with " 'fundamental principals of liberty and justice.' ") After examining the totality of the circumstances, the court in Martinez concluded that the government's error in failing to order the execution of the petitioner's sentence did not constitute "action so affirmatively wrong or inaction so grossly negligent that fundamental fairness is violated." 837 F.2d at 865. Of particular significance to the present case, in reaching this conclusion the court specifically noted that petitioner Martinez had testified that "he knew a mistake had been made." Id.

2014 WL 1794561 at * 4-6.

Petitioner is not entitled to relief under the waiver theory because his failure to be released to the custody of the U.S. Marshal after the conclusion of his state sentence was not based on government acts that were affirmatively improper or grossly negligent. Instead, the record demonstrates that CDCR released petitioner to ICE, rather than the U.S. Marshal, because the U.S. Marshal lodged the detainer with the Santa Clara County Jail, rather than CDCR. The U.S. Marshal's failure to lodge the detainer with CDCR was, at most, a negligent mistake.

Petitioner is also not entitled to relief under the estoppel theory. In making this finding, the undersigned primarily relies on the second element of the "estoppel test," i.e., the party to be estopped must intend that his conduct shall be acted on or must act so that the party asserting the estoppel has a right to believe it is so intended. In Johnson, the Ninth Circuit found that the second element was present because petitioner had a right to believe, after his parole computation passed successfully through as many as eight administrative reviews, that he would remain on parole during good behavior. 682 F.2d at 872. In the instant case, there is no evidence that actions taken by the government created any reasonable belief that petitioner's release was

////

////

proper. For example, there is no evidence that the government "actively misadvised" petitioner that he did not have to serve his federal sentence.[1]

For the reasons discussed above, the undersigned finds that the government's error in failing to execute petitioner's sentence did not violate fundamental fairness. Petitioner's due process claim is without merit.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 16, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Lop1092.157

---

[1] In the response to respondent's answer, petitioner alleges that he made "repeated attempt[s] to question his federal sentence." (ECF No. 16 at 2.) Petitioner also alleges that he was "made to believe that he no longer had to fulfill his federal sentence and that his release" was not based on a mistake. (Id.) Petitioner does not describe his "repeated attempts" to question his federal sentence. Petitioner also does not describe any communications from the government which led him to believe that he did not have to serve his federal sentence.